FRANCOIS, Appellant, vs. CADY LAND COMPANY, Respondent.

*March 12—April 3, 1912.*

*Deceit: When actionable: Opinions as to value of property: Statute of frauds: Oral contract of guaranty: Pleading: Amendment: Changing action from contract to tort.*

1. A false representation must be relied and acted upon in order to be actionable.
2. Statements as to the value of property about to be sold, where inspection is open to the buyer, are ordinarily regarded as mere expressions of opinion, and will not be regarded as statements of fact on which actionable fraud can be based, in the absence of extrinsic circumstances, like fiduciary relations or artifice, by which the buyer is prevented from making investigation himself.
3. A contract by which the vendor of a note and mortgage executed by a third person guarantees payment thereof is a contract to answer for the debt, default, or miscarriage of another, and is void, under sec. 2307, Stats. (1898), if not in writing.
4. An amendment which does not state facts showing an actionable tort does not change a complaint from one on contract to one in tort.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

The defendant is a corporation dealing in real estate and real-estate securities at Green Bay. On October 8, 1907, the plaintiff purchased from the defendant at par the note of one John Mosuch and wife for $2,300, due three years after its date (viz. September 14, 1907), secured by a mortgage upon a lot and building thereon in the city of Oshkosh, which the

plaintiff had never seen.    The plaintiff had previously pur-
chased of the defendant several securities of the same kind,
and he alleged in his complaint

"That said *Joseph P. Francois* had for some time pur-
chased from the *Cady Land Company* other notes held and
owned by it.    That it was the understanding and agreement
by and between said *Cady Land Company* and said *Joseph
P. Francois,* that said *Cady Land Company* should stand
back of, make good, and guarantee collection and payment of
all notes, mortgages, or other evidences of indebtedness which
said plaintiff should at any time purchase for it.    And it was
understood and agreed by plaintiff and defendant that said
*Cady Land Company* would stand back of, make good, and
guarantee the payment and collection of such note of John
and Elizabeth Mosuch.    And that if said makers did not pay
the same according to the tenor of the note and mortgage here-
inafter referred to, then said *Cady Land Company* would
itself pay the same.
"That said plaintiff is a man unskilled in business ways and
especially as to legal matters, and relied in the transaction
herein set out upon said defendant, and had no attorney or
other legal advice, but depended upon said defendant and its
promises aforesaid."

The complaint further alleged that the real estate described
in the mortgage was not worth the face of the mortgage, and
that the defendant knew the fact at the time of the sale, that
the interest due September 14, 1908, was unpaid, that the
makers of the note are insolvent, that the mortgage was duly
foreclosed and the property sold, from which sale the plaintiff
received to apply on his debt $1,627.10, leaving a balance un-
paid of $1,097.16, for which judgment was demanded against
the defendant.

The action was tried before a jury, and the following spe-
cial verdict was rendered:

"(1) Did the defendant at the time it sold the note and
mortgage in question to the plaintiff agree with him, as part
of the contract of said sale, that it would stand back of and
make good the same?    *A.* No.

"(2) Did the defendant represent to said plaintiff, while negotiating said sale, that the mortgaged property was worth $4,500 ?   A. Yes.

"(3) If your answer to the second question should be 'Yes,' then answer this: Did the plaintiff buy said note and mortgage relying upon said representation ?   A. Yes.

"(4) What was the fair market value of said mortgaged property at the time of said sale ?   A. $2,700."

The court made an additional finding of fact to the effect that "all representations made by said defendant or its agents as to the value of the mortgaged property were made honestly and in good faith, and without intent on the part of the defendant or its officers to induce the plaintiff to forego independent investigation as to the true value of said land." Thereupon the court dismissed the complaint, and the plaintiff appeals.

*Sol. P. Huntington,* for the appellant.

For the respondent there was a brief by *Cady, Strehlow & Jaseph,* and oral argument by *Samuel H. Cady.*

WINSLOW, C. J.   The action was brought upon a supposed contract of guaranty.   This is apparent from the complaint. Upon the trial the plaintiff's evidence showed that the defendant's agent, at the time plaintiff purchased the mortgage, represented that the mortgaged property was worth somewhere from $4,500 to $5,000, and that he relied upon the representation.   The defendant's agent admitted that he stated that in his opinion it was worth $4,500.   At the close of the evidence in the case and on June 16, 1911, the plaintiff was allowed to amend his complaint by adding after the allegation that the mortgaged real estate was not worth the face of the mortgage and that the defendant knew that fact, the following words: "but represented to the plaintiff that said property was worth $4,500, but as matter of fact it was not worth more than $2,000."   The reason for the making of this amendment is not obvious.   If the idea was to state a cause of action in tort

for damages caused by false and fraudulent representations it was entirely insufficient, because it did not allege that the plaintiff relied upon the alleged representation in making the purchase. A false representation must be relied and acted upon in order to be actionable. *Puffer v. Welch,* 144 Wis. 506, 129 N. W. 525. So the amendment did not change the complaint from contract to tort, even conceding that such a change could have been properly made under the provisions of ch. 353 of the Laws of 1911 (sec. 2669*a,* Stats.), allowing the making of amendments changing a cause of action from contract to tort, which act took effect June 17, 1911.

If it be argued that the form of the pleading should be disregarded, that the evidence of fraud came in without objection, and that, the verdict having determined the fact of reliance, there should be judgment for the plaintiff thereon, the answer is that there is no finding that the representation of the value of the mortgaged property was a representation of fact. It is very well known that statements of the value of property about to be sold, where inspection is open to the buyer, are ordinarily regarded as merely expressions of opinion, and will not be regarded as statements of fact on which actionable fraud can be based, in the absence of extrinsic circumstances, like fiduciary relations or artifice, by which the vendee is prevented from making investigation himself. *Horton v. Lee,* 106 Wis. 439, 82 N. W. 360. There was no finding of any such extrinsic circumstances here, and no request by the plaintiff to submit any questions covering such matters. It must be considered, therefore (conceding that the questions were material), that they were determined by the circuit judge in conformity with the judgment. Sec. 2858*m,* Stats. (Laws of 1907, ch. 346). Indeed, the finding actually made by the court seems in effect to cover the question and make the expression relied upon simply an opinion. These considerations dispose of the tort features of the case, if any there be.

As to the contract feature little need be said. It is clear that if there was any contract at any time it was a contract to answer for the debt, default, or miscarriage of another, and such contracts are void if not in writing. Sec. 2307, Stats. (1898). The reasons why there can be no recovery on contract seem to be so numerous as to be almost embarrassing: (1) The jury found as a fact that none was made at the time of the sale; (2) if any promise was made before the sale, the evidence shows that it was nothing more than a naked promise without consideration of any kind; (3) whether made before or at the time of the sale, it was void because not in writing.

*By the Court.*—Judgment affirmed.

