OTT, Appellant, vs. HOOD, Respondent.

*January 7—January 28, 1913.*

*Limitation of actions: When cause of action arises: Demand: Attorney and client: Trust relation: Failure to pay over moneys collected: Fraudulent representations: Pleading.*

1. An attorney who makes a collection for another, there being no special agreement as to service, should remit the proceeds to his client, less his reasonable charges, within a reasonable time, or notify the latter of readiness to pay.
2. Failure to do as stated in No. 1 perfects a cause of action in favor of the client to recover the money due him, which starts the six-year statute of limitations running; no demand and refusal, as a condition precedent to the right to proceed, is necessary.
3. Ignorance of the existence of a cause of action in one's favor, though produced by the fraud of his adversary, does not delay the statute of limitations, unless, according to the law, prior to our code of limitations, the cause of action would be for relief on the ground of fraud under sub. 7, sec. 4222, Stats.
4. The term "cause of action" in sec. 4222, has reference to the violated right, not the mere form of remedy for the violation. If, formerly, such a wrong was remediable either at law or in equity, it is not within the saving grace of the statute.

5. An attorney and client sustain relations of trust and confidence, very much the same as trustee and *cestui que trust* commonly do.

6. If one occupying a position of trust as indicated, makes false representations to his *cestui que trust*, who relies thereon to his pecuniary injury, he commits an actionable wrong, remediable as other actionable fraud, and the statutes of limitation begin to run thereon from the commission of the wrong.

7. If an attorney misrepresent to his client respecting whether he has collected money for the latter, whereby such client, in reasonable reliance thereon, fails to seasonably invoke the law for recovery thereof, thus permitting the right thereto to be extinguished by the statute of limitations, a cause of action accrues in favor of the client against his attorney for damages for such injury.

8. In an action for damages for fraudulent representations the pleader must show by appropriate allegations reliance thereon to his pecuniary injury.

9. If a person sues his attorney for money collected and which such attorney has been permitted, because of his own false representations, to keep until the right to recover it has been extinguished by the statute of limitations, and then such attorney successfully pleads such statute in an action on contract, stating the false representation as the cause for delay, the complaint should be sustained for recovery of damages for the fraud, if it fairly appears that the damages were thus caused, in that the plaintiff relied upon the false representations in failing to sue within the statutory period upon the cause of action on contract.

[Syllabus by MARSHALL, J.]

BARNES, J., dissents in part.

'APPEAL from an order of the circuit court for La Crosse county: E. C. HIGBEE, Circuit Judge. *Affirmed.*

Action to recover on contract. The complaint is to this effect: The plaintiff delivered to defendant, an attorney at law, practicing the profession thereof in La Crosse, Wisconsin, a promissory note for collection. July 28, 1892, he collected thereon $200. He repeatedly, thereafter, represented that he had not been able to collect anything on the note, and plaintiff did not know to the contrary until Novem-

ber 15, 1910. She then demanded payment of the defendant, which was refused.

Defendant demurred for insufficiency, and further, upon the ground that the claim was barred by sec. 4222, Stats., particularly sub. 3. The demurrer was sustained.

For the appellant there was a brief by *John J. Vlach,* attorney, and *John F. Doherty,* of counsel, and oral argument by *Mr. Vlach.*

*C. L. Hood,* respondent, in person.

MARSHALL, J. The complaint plainly stated a cause of action on contract accrued to plaintiff more than six years before the commencement of the action. A demand was not necessary to perfect such cause, provided defendant had a reasonable time to account to his client. It ripened as soon as the attorney breached his duty inhering in his agreement to remit to plaintiff the proceeds of the note, or notify her of readiness to pay within a reasonable time after the money was received. That is elementary. Mechem, Agency, § 530.

It is often said, in adjudicated cases of this kind, that no cause of action arises except upon demand and refusal to pay, so one is liable to indulge in the idea that there is an unconditional rule to that effect. Such rule presupposes that the collector has, reasonably, notified his principal of the collection and only waits opportunity to pay over the money, personally, or remit the same in such manner as such principal may direct. The client need not, in order to protect his interests, in such circumstances as here, keep in touch with the attorney's office in order to demand the money. He may wait for notice, relying upon the duty to give such notice within a reasonable time, and in case of failure he may sue without further ceremony. The delay completes the cause of action as perfectly as demand and refusal. Mechem, Agency, § 531.

That a reasonable time, within the foregoing rule, expired more than six years before the action was commenced, is plain. It follows that, unless the alleged ignorance of facts postponed the running of the pleaded statute of limitations, it extinguished plaintiff's right, as the trial court held.

Appellant's counsel contend that there was an efficient postponement of the limitation upon her right and cite authorities elsewhere, some to the general effect that, fraudulent concealment supersedes the positive terms of such a law, the court thus engrafting a condition upon the written law, and some based on the condition being expressly stated in the statute,—overlooking the fact that the whole subject has been several times covered by adjudications of this court showing that our statute is unconditional in its letter and that it does not admit of change by construction or displacement by fraud or estoppel. A cause of action on contract, whether for damages or otherwise, commences to run from the time of the breach, whether the facts are known to the party having the right or not and if the latter, whether through ignorance, neglect, or mistake of such party or fraud of his adversary. There is no exception. *Boyd v. Mut. F. Asso.* 116 Wis. 155, 90 N. W. 1086, 94 N. W. 171; *Pietsch v. Milbrath,* 123 Wis. 647, 101 N. W. 388, 102 N. W. 342; *Rowell v. Smith,* 123 Wis. 510, 102 N. W. 1; *Charmley v. Charmley,* 125 Wis. 297, 307, 103 N. W. 1106; *Figge v. Bergenthal,* 130 Wis. 594, 109 N. W. 581, 110 N. W. 798; *Guile v. La Crosse G. & E. Co.* 145 Wis. 157, 169, 130 N. W. 234; *Williams v. J. L. Gates L. Co.* 146 Wis. 55, 60, 130 N. W. 880.

The inexorable nature of our statutes of limitations is most emphatically illustrated by *Pietsch v. Milbrath, supra,* and, in effect, by all the other cited cases, by use therein of this language from *Bank of Hartford Co. v. Waterman,* 26 Conn. 324, 330:

"Ignorance of his rights on the part of the person against whom the statute has begun to run, will not suspend its oper-

ation.  He may discover his injury too late to take advantage of the appropriate remedy.  Such is one of the occasional hardships necessarily incident to a law arbitrarily making legal remedies contingent on mere lapse of time. . . . Strong equitable considerations in favor of the present plaintiffs seem, however, to grow out of the fact, that they were actually *betrayed* into ignorance of their rights by the wrongful acts of the defendant himself. . . . It is palpably unjust for the defendant to set up the statute as a defense under such circumstances; to do so is in one sense taking advantage of his own wrong.  Yet it is difficult to see that he is not, by the clear provisions of the statute itself, protected in so doing. . . . Lord CAMPBELL properly suggested, relative to a controversy not unlike the present, that 'hard cases must not make bad law.' . . . If the *dictum* of Lord MANSFIELD that 'there *may be* cases which fraud will take out of the statute of limitations,' were confirmed by direct adjudication, we should be reluctant to withhold the application of the doctrine in the present instance."

That seems, at first blush, to be counter to the rule that there is "no wrong without a remedy," but that valuable maxim deals with only such transgressions as are, by the law of the land, of sufficient dignity to merit judicial interference.  That which is, by such law, right, is not wrong within the basic maxim of such judicial remedies.  "Courts must regard wrongs, not remediable because of the statute, as not wrongs at all, at least of any greater dignity than those breaches of moral obligations which must always be left to be redressed in other ways than by judicial tribunals, they not being within the maxim 'There is no wrong without a remedy.'"  *Rowell v. Smith,* 123 Wis. 510, 529, 102 N. W. 1. So "it has been held that if one is merely betrayed into ignorance of his rights as to another by wrongful conduct of the latter until the time shall have expired for him to invoke judicial remedies to vindicate the same, such other is not thereby estopped from pleading the limitation period in respect to the matter; that standing upon his statutory rights

he may safely confess his misconduct and defy his adversary in any judicial forum." *Rowell v. Smith, supra,* p. 528.

The language of the last quotation may well challenge the attention of respondent in this case.   There may be purely moral transgressions quite as perilous to the transgressor as any judicially remediable infraction of legal or equitable rights.   "The way of the transgressor is hard" is a maxim of universal application.   It applies to the morally delinquent as well as to the wrongdoer who can be judicially punished.   True, he may sometimes "boldly confess his wrong and defy his adversary in any judicial forum," but there is the high court which is above human creation and there is the court of conscience and of public opinion.   Notwithstanding all the exultation of victory one may indulge in, shielded by the statute, he must in the end bow, most humbly, before those other tribunals, and the inevitability of it must make him pause before it is too late, for the penalties are sure to come in some way, vindicating the maxim that "The way of the transgressor is hard," even where the maxim "There is no wrong without a remedy" is conditional, unlike the former which is not.

The foregoing is not intended to cast discredit, in general, upon pleading the statute of limitations.   It has a necessary place in our social state and judicial system, yet there are circumstances where it is unconscionable to plead it, notwithstanding it is right, in law and equity, by legislative standards to do so.   That it cannot be avoided for equitable reasons, it must be understood, is a matter of legislative rather than judicial creation.   The former, with conditional limitations as to constitutional rights, is the supreme and infallible judge of what shall be the test of right conduct in the relations between members of society.   However, the very pleading of the statute and insisting upon it might be such an infraction of duty as to create an offense, by itself, in the field where integrity is so essential as in case of an at-

torney at law and officer of the court, and want of it a subject to be dealt with upon a charge of unfitness against which there is no statute of limitations.

While it seems best, under the circumstances of this case, to say what has been said, since on the face of the record the respondent stands confessing receipt and retention of his client's money, and defying her to obtain redress, we must assume that he has some better defense and used the summary one of the statutory bar rather as a convenience or as a justifiable necessity because of undisclosed facts. If the outcome happens that all circumstances must be judicially inquired into, it will, perhaps, be the better for both parties.

The foregoing sufficiently shows that the cause of action here does not fall within sub. 7, sec. 4222, Stats., providing that "An action for relief on the ground of fraud in a case which was on and before the twenty-eighth day of February A. D. one thousand eight hundred and fifty-seven, cognizable solely by the court of chancery. The cause of action in such case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud." *First,* this is not an action for relief upon the ground of fraud; *second,* such an action, within the meaning of the statute, was not at the time solely cognizable in equity. The word "action" has reference to the remediable right. If a violated right was formerly remediable at law or in equity, then, in case of either form of action being resorted to, it is not within the saving grace of the statute. That is, when the bar is complete at law it is also complete in equity. The mere form of action, as to a matter remediable in either one field or the other, does not affect the question. *Figge v. Bergenthal,* 130 Wis. 594, 621, 109 N. W. 581, 110 N. W. 798. The fact that the legislature saw fit by this provision to save rights of action during delays under the particular circumstances mentioned, unmistakably, shows an intent that sub. 3, upon which respondent relies, should be applied as

unconditionally as its letter indicates. So it is considered that the lapse of six years after appellant might have commenced her action for breach of contract, extinguished any right which can be redressed under the present complaint as it now stands.

The facts disclosed have challenged our attention as to whether appellant does not state an existing cause of action for redress for a remediable wrong committed subsequent to the breach upon which the statute has run. Such a breach is possible between trustee and *cestui que trust* or parties sustaining similar relations, as indicated in *Ludington v. Patton,* 111 Wis. 208, 86 N. W. 571. Such relations exist between attorney and client. They existed in this case. When appellant asked respondent about the status of the matters placed in his hands, it was his duty to make a full disclosure. According to the complaint he breached that duty by reason of which, if plaintiff reasonably relied thereon until the six-year statute of limitation had run upon her right of action to recover on contract, she lost it. In other words, she was pecuniarily damaged by such breach to the extent of the money respondent should have paid over to her and interest. The duty was not merely a moral obligation. It was a duty imposed by the common law and is grounded in common honesty. Why then is not violation of it, working damage without efficient fault of the one damnified, remediable? This court, emphatically, answered that question in *Ludington v. Patton, supra.* While vindicating the law as we have before stated it, as regards the unconditional application of statutes of limitations, it was held that if a person holding relations of trust and confidence with another and charged with the duty to guard such other's pecuniary interests, induces such other to take such a course as to lose a right against such person, that of itself is a remediable wrong, starting the six-year statute of limitations running as to it. So the right of Mrs. Ludington to elect whether she would take the interest in her husband's estate afforded her

by statute or the one given by Mr. Ludington's will, having been lost by breach of duty of her trustees, the violated duty itself was held to give rise to a cause of action for damages.

It is considered that the rule stated applies here, so far as the complaint goes. It shows the breach of duty. Does it go far enough to show, at least inferentially, that pecuniary loss was caused to appellant by the breach? That requires the fact to be pleaded that appellant reasonably relied upon the false representations made to her and so lost her claim. Ordinarily, in an action for damages for fraudulent representation, the pleader states in terms, that he relied upon the alleged false representation. But no technical method of pleading the matter is necessary. If the fact be stated, substantially, that is sufficient under the rule which applies, in general, under our liberal system of pleading. True, reliance upon fraudulent representations or failure to disclose, being of prime importance in testing the sufficiency of a complaint in an action for damages for fraud, the courts have been accustomed to look for some express allegation on the subject. Careful pleaders have been accustomed to exercise efficient care not to omit it. In *Francois v. Cady L. Co.* 149 Wis. 115, 135 N. W. 484, it is said in respect thereto, "the false representation must be relied and acted upon in order to be actionable." A complaint is insufficient if it does "not allege that the plaintiff relied upon the alleged representation." But that must be read in harmony with our system that facts may be alleged inferentially as well as expressly and do not require any particular collection of words. It may be that, in an action which involves something other than a mere breach of contract and there is a strong presumption of innocence in respect to the charge, the pleader should not have the full benefit of the ordinary liberal rules of pleading, but make his allegations with some considerable degree of precision to satisfy the test of sufficiency. In view of the facts here,—significant among them being that the pleader, having a choice between commencing an action for

damages for the misrepresentation or an action on contract for the money collected and take the chances of defendant not pleading the statute of limitations,—one should be accorded the minimum of indulgence by way of the court reading, by inference, the pleading of material facts. Under the circumstances, it is considered that appellant may not have known of respondent's having collected her money until the late date and yet not have relied, within the meaning of the rule, thereon in failing to seasonably commence her action. All we find stated is that she did not know of the collection until such late date and then she moved in the matter. This may be regarded somewhat technical. The writer bows to the judgment of his brethren as to whether it is too much so, appreciating that we are considering the question of whether the complaint in an action on contract for money, can be sustained as good for relief in the form of an action for damages for false representations, under the liberal rule that the court will look to the case made by the pleading and sustain it for whatever judicial relief the facts stated, expressly or inferentially, if established, may require, without restriction by the pleader's intent or prayer for relief or the mere form of action. The court is not prepared to go so far with that valuable rule as to read, by inference, out of the complaint here to enforce a cause of action on contract, the material fact under consideration, but will let the trial court deal with the matter on a return of the record in an application for leave to amend, which may well be received with favor. That would fill a twofold office. It would afford appellant an opportunity for redress for false representations made, if in fact they were made to her damage, and afford respondent an opportunity to vindicate himself from the appearance which will, otherwise, be left upon the record of his having taken advantage of the statute of limitations to shield himself from having appropriated his client's money.

In this we do not fail to appreciate, as is thought, what was said in *Ludington v. Patton,* 111 Wis. 208, 86 N. W.

571, as to the probative force of acts as regards the existence of the fact regarding reliance upon the false representation. The fact was there very fully pleaded. ;What was said in the opinion had reference to the circumstantial proof of the alleged fact.

*By the Court.*—The order is affirmed, and cause remanded for further proceedings according to law.

BARNES, J. (*dissenting in part*). Under the liberal rules for the construction of pleadings which this court has adopted and which it generally follows, it should be held that the complaint in this case contains sufficient by way of averment to state a cause of action for damages for false representations. The complaint alleges that defendant repeatedly informed the plaintiff that the note had not been collected, and, further, that she did not know that it had been collected until November, 1910, whereupon demand was made, etc. The implication may fairly be drawn from these averments that plaintiff did not bring her action within the six-year period because of the false representations. If this is true, she necessarily relied on them, and the order should be reversed.